# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00040-CR

**Jose Alfonso Aviles, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-11-300851, THE HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jose Alfonso Aviles of capital murder for shooting and killing both Norma Hurtado and Maria Hurtado during the same criminal transaction. *See* Tex. Penal Code § 19.03(a)(7)(A). Because the State did not seek the death penalty, the trial court automatically sentenced appellant to life in prison without parole. *See* Act of May 28, 2005, 79th Leg., R.S., ch. 787, § 1, sec. 12.31, 2005 Tex. Gen. Laws 2705 (amended 2009, 2013) (current version at Tex. Penal Code § 12.31(a)(2)) (providing that person convicted of capital murder shall be punished by imprisonment for life without parole when State does not seek death penalty). In a single point of error on appeal, appellant complains about the trial court's denial of his requested jury instruction for the lesser-included offense of murder. Finding no error in the trial court's denial of appellant's requested instruction, we affirm the trial court's judgment of conviction.

## BACKGROUND[1]

When she was 17, appellant's daughter, Lidia Aviles, began a romantic relationship with Norma Hurtado. Appellant's disapproval of their relationship strained his relationship with his daughter. When Lidia turned 18, she moved out of appellant's home into Norma's family home in Austin where she and her daughter lived with Norma and her parents, Maria and Agapito Hurtado.[2]

Two months after the move, appellant went to the Hurtado home to confront Norma about her relationship with Lidia, her bad influence on Lidia (causing her to skip school and neglect her parenting duties), and her interference with his access to his granddaughter.[3] Appellant's son, Humberto Aviles, drove appellant to the Hurtado home, parking several houses away upon appellant's instruction so the Hurtados would not see appellant. Humberto walked to the Hurtado home and knocked on the front door. By the time he knocked on the door, appellant had joined him. Maria Hurtado, Norma's mother, answered the door. Appellant asked if Lidia was home. Maria indicated she would check and walked away from the door. When she returned, Norma followed, and a confrontation between Norma and appellant ensued. During the confrontation, appellant removed a 9 mm pistol from his waistband and fired at both women until he emptied all 14 rounds

---

[1] Because appellant does not challenge the sufficiency of the evidence to support his conviction, we provide only a general overview of the facts of the case. *See King v. State*, 953 S.W.2d 266, 267 (Tex. Crim. App. 1997). We provide additional facts as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

[2] The record reflects that Lidia had a child when she was 15.

[3] Lidia's testimony indicated that appellant had a very close relationship with his granddaughter, treating her as his own daughter, and was distraught when Lidia removed her from his home.

in the weapon. Maria was shot once, a fatal shot to the front of her neck, and died instantly. Norma was shot multiple times, with entrance wounds to the front of her body as well as her back when she turned during the shooting. Norma died a few minutes later in Lidia's arms.

Appellant was arrested the following day in San Antonio, and the murder weapon was recovered from his car. He subsequently confessed to the shooting.

## DISCUSSION

In his sole point of error, appellant argues that the trial court erred in denying his request for an instruction in the jury charge on the lesser-included offense of murder.

At trial, appellant conceded that he intended to kill Norma, but maintained that he did not intend to kill Maria. He acknowledged responsibility for both deaths, but argued he was not guilty of capital murder—murdering more than one person during the same criminal transaction—because he did not intentionally or knowingly kill Maria. In short, appellant's defense was that he was guilty of murder (for intentionally or knowingly killing Norma) and manslaughter (for recklessly killing Maria), but not capital murder (for intentionally or knowingly killing both Norma and Maria).

Pursuant to appellant's theory—that the jury should only convict him of murder not capital murder because he only intended one death, that of Norma—appellant requested jury instructions for the lesser-included offenses of murder (for killing Norma) and manslaughter "by reckless means" (for killing Maria). The trial court denied both instructions. On appeal, appellant complains about the trial court's failure to include the murder instruction (for killing Norma) in the jury charge.

3

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). Determining whether a defendant is entitled to a lesser-included-offense instruction requires a two-part analysis. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). We first consider whether the offense contained in the requested instruction is a lesser-included offense of the charged offense. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535. If so, we must decide whether the admitted evidence supports the instruction. *Goad*, 354 S.W.3d at 446; *Rice*, 333 S.W.3d at 144.

By definition, murder was a lesser-included offense here because it could be established by proof of the same or less than all the facts required to establish the commission of capital murder. *See* Tex. Code Crim. Proc. art. 37.09(1); *see also Young v. State*, 283 S.W.3d 854, 875-76 (Tex. Crim. App. 2009) (noting Court of Criminal Appeals has long held that murder is lesser-included offense of capital murder). Thus, we proceed to the second prong. Under this prong, we must determine if there is some evidence in the record that would permit a jury to rationally find that, if appellant is guilty, he is guilty only of the lesser-included offense. *See State v. Meru*, 414 S.W.3d 159, 163 (Tex. Crim. App. 2013); *Rice*, 333 S.W.3d at 145. The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Rice*, 333 S.W.3d at 145 (quoting *Hall*, 225 S.W.3d at 536); *Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008). We consider all of the evidence admitted at trial, not just the evidence presented

4

by the defendant. *Goad*, 354 S.W.3d at 446; *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). "Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge." *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). We may not consider the credibility of the evidence or whether it conflicts with other evidence or is controverted. *Goad*, 354 S.W.3d at 446-47. However, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Sweed*, 351 S.W.3d at 68 (quoting *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997)); *see Williams v. State*, 294 S.W.3d 674, 681 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("There must be affirmative evidence in the record raising the lesser offense before an instruction is warranted.") (citing *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense. *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex. Crim. App. 2012).

A person acts "intentionally" with respect to a result of his conduct when it is his conscious objective or desire to cause the result. Tex. Penal Code § 6.03(a). A person acts "knowingly" with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Finally, a person acts "recklessly" with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c). Thus, to warrant a lesser-included-offense instruction on murder in this case, there must be some evidence in the record demonstrating that appellant was aware of

5

but consciously disregarded a substantial and unjustifiable risk that death would occur from shooting Maria. This evidence must also rebut or negate the mental state of the greater capital murder offense: intentionally or knowingly. That is, this evidence must also demonstrate that appellant did not act with the conscious objective or desire to cause death or with awareness that his conduct was reasonably certain to cause death when he shot Maria. Appellant directs us to no such evidence. The evidence he relies on does not demonstrate a reckless killing.

As support for his assertion that a lesser-included-offense instruction should have been given, appellant points to evidence demonstrating that he harbored animosity toward Norma when he shot her (thus showing his specific intent to kill her) and highlights the absence of such evidence regarding Maria (thus failing to show his specific intent to kill her). Appellant appears to confuse the requisite mental states of intentionally or knowingly causing Maria's death with premeditation or malice. The fact that appellant harbored no animosity or ill-feeling toward Maria does not affirmatively demonstrate that he did not act with the conscious objective or desire to cause death or with awareness that his conduct was reasonably certain to cause death when he shot Maria.

Appellant also relies on a particular portion of his confession, the video of which was admitted into evidence along with a translation in English. During the interview, the detective asked appellant why he shot Maria when he was angry at Norma. Appellant indicated that "[s]he just got in the way." At trial, during cross examination of the detective, appellant emphasized the fact that the Spanish word appellant used in giving that answer ("atravesó") means "to travel through" or "pass in front of or pass through." Relying on *Roberts v. State*, appellant maintains that his response

6

using this word constitutes evidence demonstrating that he "inadvertently" or "accidentally" shot Maria when she passed in front of Norma, perhaps in an effort to protect her daughter.

In *Roberts*, the defendant murdered a woman and her unborn child. *Roberts v. State*, 273 S.W.3d 322, 324-25 (Tex. Crim. App. 2008). The woman was eight to nine weeks pregnant, and there was no evidence that the defendant was aware the woman was pregnant. *Id.* at 327. The court reasoned that in the context of the multiple-murder-capital-murder statute, which requires that each death be intentional or knowing, the concept of transferred intent cannot be used to charge capital murder based on the death of an unintended victim. *Id.* at 330-31. The court held that in order to charge a person with intentionally or knowingly killing the second person, an unborn child in the *Roberts* case, there must be the specific intent to do so. *Id.* at 331. The court then concluded that since the defendant did not know that the intended victim was pregnant, he could not form the specific intent to kill the unborn child of which he was unaware. *Id.*

Appellant's reliance on *Roberts* to demonstrate his lack of specific intent to kill Maria in the instant case is misplaced. The evidence reflects that appellant was aware of Maria the entire time. Although not specifically acquainted with her (by name or as Norma's mother), he acknowledged that Maria answered his son's knock on the door. In his interview, he expressed that he was aware of Maria during his confrontation with Norma, indicating that Maria spoke some ("not much") and did not have any type of weapon (a knife or gun). Appellant also demonstrated knowledge of Maria's physical location, indicating that both women were the same distance from him when he started shooting. Thus, unlike the defendant in *Roberts*, appellant had an awareness of Maria in order to be able to have the specific intent to kill her.

7

The single Spanish word used in his confession, even if taken to mean that appellant shot Maria when she "passed in front of" Norma, does not demonstrate that appellant inadvertently shot Maria.[4] In his explanation, appellant merely offered Maria's physical position as a reason why he shot her. He never said that he accidentally shot Maria or suggested that he did not mean to shoot her. In fact, several times during the interview appellant stated that he "fired at" both women. Furthermore, even if appellant shot Maria when she "got in the way" or "passed in front of" Norma, that mere fact in and of itself does not demonstrate that appellant accidentally or inadvertently caused her death. Appellant's contention that this evidence shows that he recklessly caused Maria's death is speculation based on unsupported inference, especially in the absence of any affirmative expression by appellant that killing her was accidental or inadvertent. Moreover, this evidence—the fact that appellant shot Maria when she passed in front of Norma—does not negate the greater mental state of knowingly causing Maria's death. The other evidence at trial, including appellant's diagram of everyone's position when he started firing his gun and the medical examiner's testimony, demonstrated that appellant was holding the gun less than two feet from Maria when he shot her through the front of her neck.[5]

---

[4] This is particularly true when the word is isolated or taken out of context, as appellant does here. The detective testified that when appellant spoke of shooting Maria, he "swiped both of his hands towards the right." The detective testified to his understanding of appellant's response when combined with the gestures he made: "When I take into account his nonverbal behavior at the time, I got the impression that he was saying to get her (Maria) out of the way so that he could focus on Norma."

[5] The medical examiner's testimony about the stippling pattern around the gunshot wound in Maria's neck indicated that the gun was between two to 24 inches away from Maria when appellant fired it.

Neither the lack of evidence of animosity toward Maria nor appellant's explanation of why he shot her constitutes evidence showing that appellant recklessly killed Maria. Even when describing in his confession that Maria "got in the way" (or "passed in front of" Norma), appellant did not indicate that he accidentally or inadvertently shot Maria during the confrontation with Norma. Instead, appellant merely recounted Maria's physical position as the reason he shot her. We find no evidence demonstrating that appellant did not act with the conscious objective or desire to cause death or, at the very least, with awareness that his conduct was reasonably certain to cause death when he shot at Maria holding the gun less than two feet from her. Consequently, we find no evidence negating or rebutting the culpable mental states (intentionally or knowingly) of the greater offense (capital murder).

For these reasons, we cannot conclude that the second prong of the test was satisfied in this case, nor can we conclude that the trial court erred by denying appellant's requested instruction on the lesser-included-offense of murder in the jury charge. Accordingly, we overrule appellant's sole point of error.

**CONCLUSION**

Finding no error in the trial court's denial of appellant's requested jury charge instruction, we affirm the trial court's judgment of conviction.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Puryear and Goodwin

Affirmed

Filed:   January 29, 2015

Do Not Publish